ROBERT C. ELDRED CO., INC. *vs.* ALEXANDER ACEVEDO. December 27, 1985. *Sale,* Rejection of goods, Delivery of goods, Contract of sale.

The plaintiff Robert C. Eldred Co., Inc., an auctioneer of art objects with its place of business in Dennis, Massachusetts, sued in Superior Court the defendant Alexander Acevedo, a New York art dealer, for the price of two watercolors sold to Acevedo on August 14, 1981. The sequence of events was brought out at the jury trial which resulted in verdict and judgment for the plaintiff.

On August 12, 1981, Acevedo telephoned Eldred Co. and expressed an interest in bidding by telephone for two watercolors (circa 1835) of the steam ferry "Highlander" by the Bard brothers. He had seen these advertised (with an accompanying photograph of one of the pictures) in the magazine *Antiques* as items of the company's Americana auction to be held on August 14. Upon being told by the Eldred Co. employee that, in order to bid by telephone, he would have to make an advance deposit of ten percent, Acevedo remonstrated. Robert C. Eldred, Jr., the chief officer of Eldred Co., then got on the phone, and, when it appeared from the conversation that Acevedo was known to Robert Skinner, a local art man (who happened to be visiting at Eldred Co. at the time, and was called to the telephone), Eldred said he was willing to waive the deposit. At the auction, Acevedo's telephone bids of $16,000 for one of the pictures, and $20,000 for the other, were the highest and successful bids. An invoice and confirmation of sale went to Acevedo with indication that payment was due thirty days after sale, with interest at 1.5 percent per month if payment was delayed. Acevedo's check for $36,000, dated September 10, was received on the thirtieth day, September 14. On September 25, an Acevedo employee called to inquire why the pictures had not been received, and was told that shipment

would be made when the check cleared: it had been put into a bank promptly for "special" collection. At this point, on September 25, Acevedo stopped payment on the check. To accommodate Acevedo, Eldred shipped the pictures to him by air freight without awaiting clearance of the check — when he did this, he did not know that payment had been stopped. On September 29, Acevedo in New York refused to take delivery of the crate containing the pictures. He never opened it. At the same time, Eldred learned that payment had been stopped. Acevedo persisted in his refusal to take delivery, still declining to view the pictures. In a conversation by telephone with Eldred, Acevedo complained of the indignities of the deposit requirement (although waived) and — more important, according to him — of the withholding of shipment pending clearance of the check.[1]

At the trial of the action, the theory of defense finally urged on the jury was that the withholding of shipment was a breach of contract by Eldred Co. which justified Acevedo's rejection of the goods and refusal to pay. The jury, however, could well find that the postponement was not only in accordance with a term of sale set out in the auction catalogue, but consistent with common practice in comparable auction sales. Directed verdict and judgment n.o.v. were properly denied.[2]

On appeal, Acevedo claims that the judge committed error in that she allowed Eldred Co.'s motion in limine, when Acevedo began to present his defense, to exclude expert testimony regarding the "value" of the pictures. This contention is related to Acevedo's pleaded defense that Eldred in the conversation of August 12 had made misrepresentations concerning the condition and value of the pictures upon which Acevedo relied to his detriment. Eldred testified that he had said nothing about the value or condition of the pictures. Acevedo testified that Eldred said the pictures were in excellent condition and he expected to get $10,000 or $12,000 for each. In response to interrogatories, Acevedo had offered as witnesses two named experts who were to testify about the condition of the pictures and their value, but neither expert was available at trial. At trial Acevedo tendered Joseph Keiffer as an expert. The judge said she would not receive testimony concerning "value," but would take testimony about condition. Counsel said in effect that he was not intending to question Keiffer about value, only about condition. Thus there was no effective tender of an expert on "value." As it turned out, no testimony was elicited from Keiffer (or anyone else) as to condition. It is indeed hard to see how at an auction sale there could be a representation about the value of pictures, independent of a representation about their condition, upon which a bidder could justifiably rely: differences of opinion about value are of the essence of the auction.

---

[1] He also complained about having to pay the charge for telephone service in connection with his bidding at the auction.

[2] We need not recount the circumstances of Eldred Co.'s holding the pictures for the account of Acevedo and suing for the sale price.

In any event, Eldred's supposed statement (according to Acevedo) of his expectation of getting $10,000-$12,000 at the auction cannot fairly be taken as a distinct representation of value, cf. *Yerid* v. *Mason*, 341 Mass. 527, 530-531 (1960); and, we may add, it is certain that Acevedo was not relying on the falsity of any such representation when he refused delivery without undertaking even to look at the pictures.

Having been hoist by his own egoism or vanity, Acevedo out of desperation presents a defense which does not deserve to succeed.[3]

*Judgment affirmed.*

*Gerald D. McLellan* for the defendant.
*Lisa G. Arrowood* for the plaintiff.

---

[3] The present appeal from judgment for the plaintiff was supported by a determination under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974). Plaintiff's added claim pursuant to G. L. c. 93A (regulation of business practices) was dismissed, and plaintiff does not press the claim on this appeal. Defendant's counterclaim under G. L. c. 93A, which appears hopeless, was apparently left undecided.